391 S.E.2d 84

**In the Matter of Ronald L. CRISLIP, Magistrate.**

**No. 19028.**

Supreme Court of Appeals of West Virginia.

March 9, 1990.

Michael J. Aloi, Fairmont, for Magistrate Ronald L. Crislip.

Charles R. Garten, Charleston, for Judicial Hearing Bd.

MILLER, Justice:

This is a review of a judicial disciplinary proceeding initiated against Magistrate Ronald L. Crislip. The Judicial Hearing Board (Board) found Magistrate Crislip had violated Canon 3 of the Judicial Code of Ethics, requiring a judge to perform the duties of his office impartially and diligently. The Board recommended a public reprimand. On review, the Judicial Investigation Commission (Commission) requests that we impose a more severe sanction.

■ Our traditional role in judicial disciplinary matters is to make an independent evaluation of the record and to consider whether the sanction recommended by the Board is appropriate. *See* West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates, and Family Law Masters, Rule III(C)(13); Rule III(D). This principle has been encapsulated in the Syllabus of *Matter of Gorby*, 176 W.Va. 11, 339 S.E.2d 697 (1985):

> " 'The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings.' Syl. pt. 1, *West Virginia Judicial Inquiry Commission v. Dostert* [165 W.Va. 233], 271 S.E.2d 427 (W.Va. 1980)."

*See* Syllabus Point 1, *In re Markle*, 174 W.Va. 550, 328 S.E.2d 157 (1984); Syllabus Point 1, *In re Pauley*, 173 W.Va. 475, 318 S.E.2d 418 (1984).

■ Included within this independent evaluation is the right to accept or reject the disciplinary sanction recommended by the Board. For example, in *In re Markle, supra,* the Board had recommended that the charge be dismissed. We disagreed and set a three-month suspension without pay. Likewise, in *Matter of Gorby, supra,* 176 W.Va. at 11, 16, 339 S.E.2d at 697, 702, the Board recommended dismissal of the charge, but we disagreed and gave a six-month suspension without pay. This suspension was later reduced to five months without pay in *Matter of Gorby*, 176 W.Va. 16, 339 S.E.2d 702 (1985), where we stated in the Syllabus:

> "The purpose of judicial disciplinary proceedings is the preservation and enhancement of public confidence in the honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice."

The present charges against Magistrate Crislip occurred when the Honorable Fred L. Fox, Chief Judge of the Sixteenth Judicial Circuit, wrote the Commission concerning his conduct.[1] The Commission conduct-

---

1. Article VIII, Section 6 of the West Virginia Constitution provides, in pertinent part:

"Subject to the supervisory control of the supreme court of appeals, each circuit court shall have general supervisory control over all magistrate courts in the circuit. Under the direction of the chief justice of the supreme court of appeals, the judge of the circuit court, or the chief judge thereof if there be more than one judge of the circuit court, shall be

ed an investigation and ultimately filed charges against the magistrate. The complaint alleged that Magistrate Crislip had violated Canons 3A(1), 3A(4), and 3A(5)[2] of the Judicial Code of Ethics by ignoring certain statutory requirements and administrative rules of the magistrate court in his handling of several cases.

At the disciplinary hearing conducted before the Board on February 9, 1989, the Marion County magistrate court clerk testified about the general procedures for filing and handling magistrate court cases. The initial step in instituting a civil action is the filing of a complaint by the complaining party with the magistrate assistant. The magistrate assistant receives the complaint, collects the filing fee, assigns the complaint a case number, and forwards the entire file to the magistrate court clerk. The magistrate court clerk's office then issues a summons.

If the complaining witness wants to file criminal charges, he must appear before a magistrate. If the magistrate finds probable cause, he issues a warrant or summons and sends the file to the magistrate court clerk's office. The clerk then forwards the warrant or summons to the sheriff for execution. If one magistrate refuses to issue criminal process, other magistrates are ordinarily precluded from doing so on the same complaint. In felony cases, once a preliminary hearing is conducted and the accused is bound over to the circuit court, the magistrate court loses jurisdiction of the case.

Both civil and criminal cases are assigned by the clerk to a magistrate in rotation. A magistrate may not act in a case assigned to another magistrate without obtaining the latter's permission. Under the Marion County magistrate court administrative procedures, if the complaining party wishes to withdraw the complaint in a criminal case, he must sign a withdrawal form, and the dismissal must be approved by the prosecuting attorney's office. The record reveals that Magistrate Crislip was aware of these procedures and understood them.

The charges against Magistrate Crislip arose from his handling of seven different cases. In *Riefer v. Riefer*,[3] a criminal trespass warrant was issued by Magistrate M.L. Twyman in May 1987, and the case was assigned to Magistrate J.P. Feltz. The parties, husband and wife, subsequently reconciled and, because they knew Magistrate Crislip personally, they asked him to have the complaint dismissed. Rather than refer them to Magistrate Feltz, Magistrate Crislip asked the sheriff's office to return the warrant without executing it. Magistrate Crislip then placed the warrant in the court file without making any disposition of the case. Magistrate Crislip did not have the complainant sign the withdrawal

the administrative head of the circuit court and all magistrate courts in the circuit."

Additionally, the magistrate statute reposes a variety of supervisory powers in the circuit judge. *See* W.Va.Code, 50–1–4; 50–1–7 (1978); 50–1–8 (1987); 50–1–9 (1987).

2. Canon 3 provides, in pertinent part:

"*A Judge Should Perform the Duties of His Office Impartially and Diligently*

"The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:

"A. Adjudicative Responsibilities.

"(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.

\*    \*    \*    \*    \*    \*

"(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to

law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

"(5) A judge should dispose promptly of the business of the court."

3. Although a number of the cases in question involved criminal proceedings, throughout the disciplinary proceedings they were referred to as having been brought in the name of the complainant rather than in the name of the State. To avoid confusion, we continue this practice for the purpose of this appeal.

of prosecution form, nor did the prosecuting attorney consent to dismiss the case.

In *Richardson v. Jones*, the complainant was seeking a criminal warrant for destruction of property arising out of an automobile accident. Both Magistrate Crislip and Magistrate C.F. Jones found no probable cause and advised the complainant that a civil action was more appropriate. Dissatisfied, the complainant expressed to Magistrate Crislip his anger at not being able to obtain a criminal warrant. Magistrate Crislip subsequently issued the warrant Magistrate Jones had previously refused to issue.

In *West v. Tilko*, a civil case which had been assigned to Magistrate Feltz, the defendant's attorney filed a motion to dismiss on April 18, 1988. A hearing on the merits of this motion was scheduled for April 27, 1988, before Magistrate Feltz. Although it was not his case, Magistrate Crislip dismissed the action the same day the motion to dismiss was filed.

In *Minico v. Zuspan*, Magistrate Crislip issued warrants for attempted assault and threatening to commit a crime by telephone. Magistrate Crislip subsequently permitted the complaining witness to withdraw the complaint without getting the necessary approval from the prosecutor's office.

*State v. Jones* involved an aggravated robbery case assigned to Magistrate Twyman. Because the defendant could not make bond, he was incarcerated. On February 10, 1988, after conducting a preliminary hearing, Magistrate Twyman found probable cause and bound the defendant over to circuit court. Approximately six days later, the defendant's mother contacted Magistrate Crislip after normal working hours and told him that she was now able to make her son's bond. Magistrate Crislip accepted the bond money and ordered the defendant released without filing the appropriate papers in the circuit clerk's office.

In *Gardi v. Custer*, the defendant had received a traffic ticket in April 1987 for parking in a fire lane. A warrant for arrest was issued in June 1987 by Magistrate Twyman. The defendant approached Magistrate Crislip and asked him to have the case dismissed. Although the case was assigned to Magistrate Jones, Magistrate Crislip spoke to the complaining officer about withdrawing the charge and kept the warrant in his desk. Eventually, Magistrate Crislip ordered the case dismissed.

Finally, Magistrate Crislip was charged with failing to assess the minimum penalties for the offenses of littering and carrying a loaded gun in a motor vehicle. Under W.Va.Code, 20–7–26(c) (1988), littering carries a minimum fine of $50. Under W.Va.Code, 20–2–5(10) (1989), and 20–7–9 (1984), carrying a loaded gun involves a minimum fine of $20. Magistrate Crislip admits that he imposed a fine of $40 on a defendant charged with these offenses in the case of *Betonte v. Edwards*.

The Board concluded that Magistrate Crislip had violated Canon 3A in (1) allowing his decision in the *Richardson* case to be swayed by public clamor and fear of criticism; (2) failing to exercise professional competence by dismissing, without authority, a case assigned to another magistrate in the *West* case; (3) knowingly violating the Marion County magistrate court administrative rules by withdrawing the criminal complaint in the *Minico* case without the approval of the prosecuting attorney; and (4) allowing himself to be influenced by *ex parte* communications in the *Gardi* case. The Board found no support for the other charges, but concluded that Magistrate Crislip had used "poor judgment" in releasing the defendant in *State v. Jones* on bond after the case had been bound over to the circuit court and in not levying the proper fine in the *Betonte* case. The Board recommended a public reprimand.

On review, the magistrate does not contest the basic facts underlying the charges. He contends, however, that because his actions involved mere procedural irregularities which resulted in substantive harm to no one, the recommendations of the Board should be accepted. The Commission argues that the facts warrant imposition of a harsher penalty.

With respect to the sufficiency of the charges, we note that the test of whether the Commission has met its evidentiary burden is set out in Syllabus Point 4 of *In re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983):

"Under Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplinary proceeding 'must be proved by clear and convincing evidence.'"

Certain of the violations charged here are evident. In the *Richardson* case, for example, the Board found that Magistrate Crislip had issued the warrant because of pressure brought by the complainant, a clear violation of Canon 3A(1). The magistrate contends that because the complainant insisted that his car was intentionally damaged, the criminal complaint for destruction of property was proper. This defense fails to recognize that both Magistrate Crislip and a fellow magistrate initially declined to issue the warrant. It was not until Mr. Jones became belligerent that Magistrate Crislip issued the warrant. The evidence was clearly sufficient to support the Board's finding that Magistrate Crislip was swayed to issue the warrant by the partisan interest of the complainant and by the criticism he would have received had the warrant not been issued, all in violation of Canon 3A(1).[4]

In addition, the magistrate acknowledges that in *Gardi*, at the request of the defendant, he attempted on several occasions to get the officer who had issued the traffic citation to withdraw it and ultimately dismissed the case. These conversations involved *ex parte* communications with a party in violation of Canon 3A(4) and an attempt to influence a complaining witness in violation of the magistrate's obligation under Canon 3 to perform his official duties impartially. Similarly, in *West*, Magistrate Crislip ordered dismissal of the case on the defendant's motion without the plaintiff having an opportunity to be heard.

Other courts have found that an *ex parte* dismissal by a magistrate of a traffic citation without good cause being shown is an ethical violation. *E.g., Matter of Haddad*, 128 Ariz. 490, 627 P.2d 221 (1981); *In re Miller*, 223 Kan. 130, 572 P.2d 896 (1977); *Matter of Ross*, 428 A.2d 858 (Me.1981); *Matter of Hardt*, 72 N.J. 160, 369 A.2d 5 (1977); *In re Nowell*, 293 N.C. 235, 237 S.E.2d 246 (1977). We conclude that an *ex parte* dismissal by a magistrate of a criminal or a civil case, without authorization by statute or rule or without other good cause shown, is a violation of Canon 3 of the Judicial Code of Ethics. Here, there was no evidence in the record which demonstrated good cause for dismissing the ticket.

Finally, in both the *Gardi* case and the *Riefer* case, Magistrate Crislip retrieved unexecuted warrants from the sheriff's office and placed them either in his desk or in court files to prevent them from being executed. Indeed, in *Riefer*, no disposition was made of the case because of the magistrate's handling of the warrant. These actions clearly violate the magistrate's general duty under Canon 3 to perform his official duties diligently and the mandate of Canon 3A(5) that the magistrate "should dispose promptly of the business of the court."

The majority of Magistrate Crislip's transgressions, however, involved violations of settled statutory and local administrative procedures. In the *Riefer, West*, and *Gardi* cases and in *State v. Jones*, he intervened without permission in cases that had already been assigned to other magistrates. In the *Riefer* and *Minico* cases, he attempted to withdraw complaints without

---

4. Counsel for the Commission asserts that the complaint for summons or warrant clearly charged a civil wrong and not a crime. The complaint stated, in material part:

"I had my car parked on Paw Paw St. of Grantown [*sic*] behind my house and Edward Jones hit my car from behind. I asked him to pay and he told me to get a [*sic*] etememt [*sic*] and he would. I got a [*sic*] estement [*sic*] and he said it was to [*sic*] much and would not pay. He damaged finder [*sic*] light light cover bottom bumper cover, Left Qtr pannel [*sic*] and side Mldg."

the signature of the complainant on the withdrawal request form and/or the approval of the prosecuting attorney.[5] In the *Richardson* case, he issued a warrant after another magistrate had refused to do so on the same complaint. In *Betonte*, he failed to assess the minimum fines required by law.

We have held in several cases that a magistrate's violation of court rules or related administrative procedures can result in disciplinary action. In *Matter of Harshbarger*, 173 W.Va. 206, 314 S.E.2d 79 (1984), for example, the magistrate on night court duty left his office without good reason before the end of his administratively established shift. We found this departure to be a violation of the magistrate's obligations under Canon 3 to perform the duties of his office diligently and censured him publicly.

A similar result was reached in *Matter of Osburn*, 173 W.Va. 381, 315 S.E.2d 640 (1984), where the magistrate was requested to come to his office to hold an initial appearance for a prisoner. Rather than oversee the initial appearance personally, the magistrate ordered his clerical assistant, who had no authority to act in his place, to handle it. We found that the magistrate's actions violated Canon 3 and warranted disciplinary punishment. As in *Matter of Harshbarger, supra,* no other incident of misconduct was charged, and we concluded that a public reprimand was appropriate.

In contrast to these rather simple violations, we held in *In re Markle*, 174 W.Va. at 555, 328 S.E.2d at 161, that a three-month suspension without pay was appropriate where the magistrate's failure to comply with guidelines for incarcerating those charged with public intoxication resulted in an inmate suicide in the county jail. *See also In re Pauley*, 173 W.Va. at 478–479, 318 S.E.2d at 422 (six-month sus-

pension for deliberate failure to follow mandatory criminal commitment procedures).

Magistrate Crislip does not contest that his actions technically constitute violations of Canon 3A, but asserts that they resulted in no harm. In *Riefer*, for example, he asserts that he had known the parties since they were children and that they came to see him because they trusted him. He argues that there was no evidence that the complainant's withdrawal of the warrant was not voluntary and asserts that he informed the complainant that, if necessary, she could obtain another warrant in the future. With regard to the *West* case, Magistrate Crislip asserts that his dismissal of the case was harmless because a motion to dismiss had been filed the same day. In *Minico,* he asserts that both parties agreed to the dismissal, and the complaining witness signed the withdrawal form. With respect to *State v. Jones,* he argues that he was not aware that the case had been bound over to the circuit court so as to deny the magistrate court jurisdiction to accept bond.

We conclude that these circumstances do not excuse Magistrate Crislip's misconduct. Even if we assume that the magistrate was motivated by a desire to accommodate the parties, this series of incidents, differing in degree of seriousness, demonstrates a pattern of disregarding statutory and administrative requirements as well as fundamental principles embodied in the Judicial Code of Ethics.

We recognize that some of the procedures in this case are unique to Marion County. The record clearly shows, however, that the local administrative rules were neither ambiguous nor complex and that Magistrate Crislip was aware of and understood them. Moreover, we must give some consideration to the fact that the chief circuit judge had only a year before brought to Magistrate Crislip's attention

---

**5.** Obviously, once criminal charges have been filed, the State has a substantial interest in seeing that the criminal laws are enforced. No doubt, it was for this reason that Marion County evolved the practice of requiring the magistrate to obtain not only a written withdrawal from the complaining witness, but also the approval of the prosecutor before a case can be dismissed.

his deficiencies in following administrative procedures.[6]

Finally, it was the chief circuit judge who brought the current charges to the attention of the Commission. We commend the willingness of a chief judge to exercise administrative supervision over the magistrates in his circuit. As we have already pointed out, this supervisory duty is a constitutional mandate, as well as a statutory requirement.

We do not find the Board's recommended punishment to be appropriate. In view of Magistrate Crislip's pattern of ignoring proper procedures and provisions of the Judicial Code of Ethics in the past as well as in the present, we conclude that a one-month suspension without pay is a proper disciplinary sanction. This sanction is to take effect fifteen days from entry of the mandate in this case.

One-month suspension without pay.

---

6. In 1986, Chief Judge Fox learned that Magistrate Crislip had allowed *ex parte* communications with interested parties to influence his decision in a criminal case. After conducting a formal hearing on the matter, Chief Judge Fox sustained the charges, but declined to refer the matter to the Commission because this was the first official complaint he had received against Magistrate Crislip and because the magistrate had admitted his error and expressed contrition.