404 S.E.2d 251

**In the Matter of Edgar G. GAINER, Magistrate of Randolph County.**

**No. 19377.**

Supreme Court of Appeals of West Virginia.

Submitted March 12, 1991.

Decided April 15, 1991.

---

R. Mike Mullins, Elkins, for Edgar G. Gainer.

Charles R. Garten, Charleston, for the Judicial Investigation Com'm of West Virginia.

## PER CURIAM:

This matter is before this Court upon review of the judicial disciplinary proceeding initiated against Edgar G. Gainer, Magistrate of Randolph County. The Judicial Hearing Board (Board) found that Magistrate Gainer had violated Canon 1 and Canon 2 A of the Judicial Code of Ethics, and recommended that he be suspended from his duties without pay for a period of one year.[1] We find that Magistrate Gainer should be given a public reprimand and be required to pay the costs of the proceeding.

The charges against Magistrate Gainer arose out of an incident which occurred in July of 1989, involving a fifteen-year-old female student employee who had been assigned to work at the Randolph County courthouse as a part of the Governor's Summer Youth Program The student, Stephanie C.,[2] primarily performed tasks such as cleaning the various county offices and halls located in the courthouse. On July 17, 1989, Stephanie C. was instructed by the janitor to clean the baseboards in the hallway outside of Magistrate Gainer's office.[3] By the middle of the afternoon, Stephanie C. had completed her assignment. At that point, she asked Magistrate Gainer, whom she had never met before, if he had any work for her to do around his office. Magistrate Gainer indicated that there was no work for her to do in his office but that they should go to the clerk of the courthouse, Rose Lloyd, to see if she had any work that needed to be done. Magistrate Gainer accompanied Stephanie C. down the hallway to the clerk's office.

As they were walking down the hallway, Magistrate Gainer placed his hand on Stephanie C.'s left side, brought his hand up around her waist, and started patting her. At the time, Stephanie C. did not think anything of his actions. However, as they approached the bottom of the stairs, Magistrate Gainer put his arms underneath her arms "grabbed up," and "squeezed" her breasts. Stephanie C. immediately jerked his hands down and continued to climb the stairs.[4]

Magistrate Gainer and Stephanie C. then went to the clerk's office. Magistrate Gainer asked Ms. Lloyd if there was any work for Stephanie C. to do and Ms. Lloyd replied that there was not. Ms. Lloyd then directed Stephanie C. to sit down and wait for Mr. Bennett. Approximately twenty minutes later, Mr. Bennett came out of the vault where he was working and Stephanie C. asked him if there was any work for her to do. Since there was no work for her to do, Stephanie C. called her boyfriend and asked him to give her a ride home. After her boyfriend picked her up, Stephanie C.

---

1. Approximately one month after the hearing before the Judicial Hearing Board, Magistrate Gainer retired from his position as magistrate in Randolph County.

2. Since the student employee in this case was fifteen years of age at the time of the incident, we shall follow our traditional practice in cases which involve sensitive facts and shall not use her last name. *See, e.g., State v. Donald S.B.,* 184 W.Va. 187, 188 n. 1, 399 S.E.2d 898, 899 n. 1 (1990); *State of West Virginia ex rel. Division of Human Services v. Benjamin P.B.,* 183 W. Va. 220, 222 n. 1, 395 S.E.2d 220, 222 n. 1 (1990).

3. Upon arriving at the courthouse to begin her work each day, Stephanie C. would report to Jimmy Bennett, a member of the county commission who was in charge of the summer student employees, to receive her assignments for that particular day. On July 17, 1989, Mr. Bennett instructed Stephanie C. to report to the janitor.

4. Stephanie C. testified that, at that point, Magistrate Gainer, stated "Oh, my."

told him of the incident, and he took her to his grandmother's home. Stephanie C. told the grandmother about the incident at the courthouse involving Magistrate Gainer, and Stephanie C.'s aunt was then called to take her home.

Stephanie C.'s aunt subsequently contacted The Women's Aid and Crisis Center, which referred her to the Appalachian Mental Health Center. The Appalachian Mental Health Center then contacted Corporal Bradshaw of the West Virginia Department of Public Safety, who initiated an investigation of the incident. Corporal Bradshaw interviewed Stephanie C. the following day in the presence of her mother and then obtained a written statement from both of them. Corporal Bradshaw later interviewed Magistrate Gainer at the state police barracks regarding the incident.

Corporal Bradshaw's investigation ultimately led to the filing of charges against Magistrate Gainer.[5] The complaint alleged that Magistrate Gainer had violated Canon 1 and Canon 2A of the Judicial Code of Ethics.[6]

At the disciplinary hearing conducted before the Board on November 1, 1990, Corporal Bradshaw testified that, during his initial interview with Magistrate Gainer regarding the incident, Magistrate Gainer denied ever knowing Stephanie C., ever seeing her, speaking to her, or having any knowledge of the incident. Yet, after the first interview, Corporal Bradshaw testified that Magistrate Gainer requested that he meet him the following day at the magistrate court in the Randolph County courthouse. When he arrived at the courthouse, Corporal Bradshaw testified that Magistrate Gainer was sitting on the steps outside and indicated that he wanted to talk to

him. He further testified that he cautioned Magistrate Gainer that any voluntary statements he made could be used against him later. Corporal Bradshaw testified that Magistrate Gainer told him that, at the time of the initial interview, he was angry. Magistrate Gainer then explained to Corporal Bradshaw the events that took place involving Stephaine C. Corporal Bradshaw testified that Magistrate Gainer's testimony was completely consistent with what Stephanie C. had told him, except that Magistrate Gainer denied ever touching her.

When Magistrate Gainer testified at the hearing, however, he denied ever having more than one conversation about the incident with Corporal Bradshaw, and further denied calling Corporal Bradshaw to meet him at the courthouse the day after the initial interview. Magistrate Gainer vehemently denied that he ever touched Stephanie C. and stated that he was only trying to help her find some work to do at the courthouse.

Following the hearing, the Board found that Magistrate Gainer had violated Canon 1 and Canon 2A of the Judicial Code of Ethics, and recommended that he be suspended from his duties without pay for a period of one year. Counsel for the Commission has recommended to this Court on review that a severe sanction be imposed against Magistrate Gainer for these violations since the Board's recommendation of a one-year suspension cannot be imposed due to Magistrate Gainer's retirement.

■ We stated the standard of evidence necessary to prove allegations of a complaint in a judicial disciplinary proceeding in syllabus point 3 of *Matter of Crislip*, 182 W.Va. 637, 391 S.E.2d 84 (1990):

5. Magistrate Gainer also was indicted by the grand jury.

6. Canon 1 of the Judicial Code of Ethics provides:

A Judge Should Uphold the Integrity and Independence of the Judiciary

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary

may be preserved. The provisions of this Code should be construed and applied to further that objective.

Furthermore, Canon 2 A provides:

A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

'Under Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplinary proceeding "must be proved by clear and convincing evidence." ' Syllabus Point 4, *In re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983).

■ Furthermore, this Court is required on review to make an independent evaluation of the Board's findings and recommendations. As we stated in syllabus point 1 of *Matter of Crislip, supra:*

' "The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings." Syl. pt. 1, *West Virginia Judicial Inquiry Commission v. Dostert*, [165 W.Va. 233], 271 S.E.2d 427 (W.Va. 1980).' Syllabus, *Matter of Gorby*, 176 W.Va. 11, 339 S.E.2d 697 (1985).

We also pointed out in *Matter of Crislip* that "[i]ncluded within this independent evaluation is the right to accept or reject the disciplinary sanction recommended by the Board." *Id.* 182 W.Va. at 638, 391 S.E.2d at 85.

■ In the case now before us, Magistrate Gainer is charged with violating Canon 1 and Canon 2A of the Judicial Code of Ethics. The commentary to Canon 2 of the Judicial Code of Ethics provides:

Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

*See also Matter of Gorby*, 176 W.Va. 11, 14, 339 S.E.2d 697, 700 (1985).

Although there were witnesses at the hearing who testified that Magistrate Gainer had a good reputation in the community,[7] this testimony was insufficient to overcome the clear and convincing evidence of Magistrate Gainer's improper actions as testified to by Stephanie C. and Corporal Bradshaw. Significantly, Corporal Bradshaw testified that Stephanie C.'s story of the incident never changed.[8] Stephanie C. consistently reiterated the events which transpired at the courthouse on July 17, 1989, from the time she filed the complaint until she testified before the Board. Yet, as observed by Corporal Bradshaw, Magistrate Gainer's version of the incident changed substantially. Magistrate Gainer initially denied either knowing or speaking with Stephanie C., then later admitted that he had spoken with her the day of the incident. Magistrate Gainer also denied talking with Corporal Bradshaw about the incident on more than one occasion, although Corporal Bradshaw testified that they had several conversations regarding the allegations. These inconsistencies in Magistrate Gainer's testimony were cited by the Board.

We conclude, after reviewing the entire record, that the allegations against Magistrate Gainer have been proven by clear and convincing evidence. By his inexcusable misconduct toward Stephanie C., Magistrate Gainer violated Canons 1 and 2A of the Judicial Code of Ethics. If Magistrate Gainer had not retired from his position as magistrate, we would have imposed a one-year suspension. However, since he has retired, we have determined that Magistrate Gainer should be given a public reprimand and be required to pay the costs of the proceeding.

Public Reprimand and costs of proceeding.

---

7. Jimmy Bennett, president of the county commission, Phyllis Phares, magistrate clerk for the Randolph County magistrate court, and Barbara Koontz, magistrate assistant to Magistrate Gainer, each testified that Magistrate Gainer had a good reputation in the community.

8. When questioned on direct as to whether Stephanie C.'s story ever varied, Corporal Bradshaw replied: "Not a bit. Not the first bit."