416 S.E.2d 248

**In the Matter of Ozell EPLIN, Magistrate of Cabell County.**

**No. 20106.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 4, 1992.

Decided March 24, 1992.

Rehearing Denied May 13, 1992.

Louis George, L.C., Huntington, for Magistrate Eplin.

Charles R. Garten, Charleston, for Judicial Investigation Com'n.

PER CURIAM:

This is a review of a judicial disciplinary proceeding initiated against Ozell Eplin. The Judicial Hearing Board ("Board") found that Magistrate Eplin had violated Canons 1, 2, 3A(1), 3A(4) and 3C(1)(a) of the Judicial Code of Ethics when he accorded special treatment to a criminal defendant in order to court favor with a state senator. The Board recommended a six-month suspension without pay, and that Magistrate Eplin be assessed the costs of these proceedings. An independent review of the record presented compels us to accept the recommendation of the Board.

The charges against Magistrate Eplin arose out of his involvement in a criminal case filed by the State of West Virginia against James T. Homonai. Mr. Homonai was involved in an automobile accident in February, 1990 wherein he fled the scene only to later return. Upon his return, Sergeant W.W. Adkins of the Barboursville police department, who was investigating the accident, arrested Mr. Homonai and charged him with "hit and run" under *W.Va.Code*, 17C–4–2 [1951] and failure to maintain insurance under *W.Va.Code*, 17D–2A–4 [1988]. Trial was thereafter set in Mr. Homonai's case for March 21, 1990 in the Cabell County Magistrate Court. Magistrate John Rice was assigned to hear criminal cases on that day.

On the morning of March 21, 1990, State Senator Ned Jones phoned Magistrate Eplin. Senator Jones informed Magistrate Eplin that Mr. Homonai was an employee of Senator Jones, and that he was making an inquiry on behalf of Mr. Homonai to determine the nature and the consequences of the charges facing Mr. Homonai. Senator Jones did not ask Magistrate Eplin to mete favorable treatment to Mr. Homonai.

Magistrate Eplin subsequently sought out Sergeant Adkins and requested that the "hit and run" charge be dropped to reckless driving and that the failure to maintain insurance charge be dismissed. Magistrate Eplin told Sergeant Adkins that he was making the request as a favor to Senator Jones. Sergeant Adkins informed Magistrate Eplin that both he and the victim of the accident desired that the case against Mr. Homonai go to trial.

Mr. Homonai, represented by defense counsel, then moved for a continuance of his trial, which was granted. Trial was reset for April 25, 1990; Magistrate William Neal was scheduled to hear the case.

On April 3, 1990, Mr. Homonai entered a guilty plea to the hit and run charge before Magistrate Eplin. Mr. Homonai was fined $100.00 and taxed $36.00 for costs as a consequence of his guilty plea. Magistrate Eplin also dismissed the failure to maintain insurance charge. The record shows that Magistrate Eplin dismissed the failure to maintain insurance charge upon Mr. Homonai's presentation of a valid insurance certificate. However, it is undisputed that Mr. Homonai purchased the insurance on April 2, 1990—one day prior to the dismissal, and that the validity of the insurance did not cover the date of the accident.

In order to accept the guilty plea and dismiss the no insurance charge, Magistrate Eplin sought the acquiescence of assistant prosecutor Margaret Brown. Magistrate Eplin informed Ms. Brown that Charles Hatcher (the assistant prosecutor who represented the State in Mr. Homonai's original court appearance on March 21, 1990) had agreed to such a disposition of the case. Based upon Magistrate Eplin's representation that Mr. Hatcher had agreed to this "deal" with Mr. Homonai, Ms. Brown acquiesced on behalf of the State.

When Sergeant Adkins discovered that Magistrate Eplin had disposed of the case, he inquired of Ms. Brown and Mr. Hatcher why he and the victim had not been consulted. Sergeant Adkins discovered that Mr. Hatcher had not acquiesced to any deal with Mr. Homonai.

On July 5, 1990, Magistrate Eplin told Sergeant Adkins that he was aware that Sergeant Adkins was angry with him over the disposition of the Homonai case, and advised Sergeant Adkins that he had disposed of the matter as a favor to Senator Jones. On July 31, 1990, Sergeant Adkins filed a complaint with the Commission alleging that Magistrate Eplin had violated the Judicial Code of Ethics in the manner by which he disposed of the Homonai case.

At the disciplinary hearing conducted before the Board on August 29, 1991, the clerk of the Cabell County magistrate court testified to the proper procedures to be used to allow one magistrate to dispose of a case that another magistrate is scheduled to hear. The clerk testified that the only proper ways to accomplish such a transfer are (1) the granting of a continuance by the scheduled magistrate; (2) the magistrate scheduled to hear the case grants permission to another magistrate to hear the case, or (3) an affidavit of prejudice is filed against the scheduled magistrate, and an order is entered by the circuit court removing that magistrate.

In Mr. Homonai's case, no affidavit of prejudice was filed. The magistrate scheduled to hear the case on April 25, 1991, Magistrate Neal, testified that he did not authorize Magistrate Eplin to dispose of the case. No continuance was granted.

When Magistrate Eplin testified at the hearing, he denied asking Sergeant Adkins to reduce the charges filed against Mr. Homonai, and stated that he merely informed Sergeant Adkins that he was making an inquiry on behalf of Senator Jones. He denied having any conversation with Sergeant Adkins on July 5, 1990. Magistrate Eplin further testified that he, and

not Magistrate Rice, heard criminal cases on March 21, 1990.[1] He testified that Mr. Hatcher informed him of a plea bargain offered to Mr. Homonai's defense counsel consisting of the terms to which he eventually allowed Mr. Homonai to plead.[2]

Magistrate Eplin further testified that he believed on March 21, 1990 that his inquiry on behalf of Senator Jones may have tainted his involvement in the case. Nonetheless, when Mr. Homonai appeared on April 3, 1990, asking to accept the alleged plea offer, Magistrate Eplin went forward and accepted the plea. Magistrate Eplin asserts the he followed proper court procedures in accepting the plea. He contends that, although he did not personally look at the "magistrate's monthly schedule," he asked a clerk which magistrate was scheduled to hear Mr. Homonai's case on April 25, 1990. The clerk gave him a name. Magistrate Eplin could not recall which magistrate's name he was given, although he was certain it was not Magistrate Neal. Magistrate Eplin contends that he phoned this unknown magistrate, and that the unknown magistrate, who was not scheduled to hear the case, gave Magistrate Eplin permission to take the plea in his stead.

Following the hearing, the Board found that Magistrate Eplin had violated Canons 1, 2, 3A(1), 3A(4), and 3C(1)(a) of the Judicial Code of Ethics,[3] and recommended that

1. The clerk of the Cabell County magistrate court submitted the "magistrate's monthly schedule" for the months of March and April, 1990, to the Board. The schedules show that Magistrate Eplin was assigned to hear civil trials on March 21, 1990, and Magistrate Rice was to hear criminal cases. Magistrate Eplin asserted that either he and Magistrate Rice switched roles on March 21, 1990, or that Magistrate Rice was "off." Magistrate Eplin presented no documentary evidence to contradict the "magistrates monthly schedule."

2. Magistrate Eplin asserts that Mr. Homonai's case was the last on the docket on March 21, 1990, and that only he and Mr. Hatcher were in the courtroom for this conversation. He could not explain why the case file shows that the case was continued by motion of the defendant, even though he testified that only Mr. Hatcher was in the courtroom at the time Mr. Homonai's case was called.

Mr. Hatcher denied having any private conversation with Magistrate Eplin on March 21, 1990. He denied offering any plea bargain to Mr. Homonai. Mr. Homonai's trial counsel denied entering into any plea agreement with Mr. Hatcher.

Strangely, neither Mr. Hatcher nor Mr. Homonai's defense counsel was asked who heard criminal trials that day. Magistrate Rice did not testify. One witness, the husband of the victim of Mr. Homonai's accident, did testify that Magistrate Rice heard criminal trials on March 21, 1990.

3. Canon 1 provides:

A Judge Should Uphold the
Integrity and Independence
of the Judiciary

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

Canon 2 provides:

A Judge Should Avoid Impropriety and
the Appearance of Impropriety
in All His Activities

A. A judge should respect and comply with he law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.

Canon 3 provides, in pertinent part:

A Judge Should Perform the Duties
of His Office Impartially and Diligently

The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:

A. Adjudicative Responsibilities.

(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.

. . . .

(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if

he be suspended from his duties without pay for a period of six months, and that he be assessed the costs of the proceedings.

■ The standard of evidence necessary to prove allegations of a complaint in a judicial disciplinary proceeding was stated in syllabus point 4 of *In re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983):

Under Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplinary proceeding 'must be proved by clear and convincing evidence.'

■ In making a determination whether the allegations have been proved by "clear and convincing evidence," this Court is required to make an independent evaluation of the Board's findings and recommendations. We stated this requirement in syllabus point 1 of *Matter of Crislip*, 182 W.Va. 637, 391 S.E.2d 84 (1990):

' "The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings." Syl. pt. 1, *West Virginia Judicial Inquiry Commission v. Dostert* [165 W.Va. 233], 271 S.E.2d 427 (W.Va. 1980).' Syllabus, *Matter of Gorby*, [176] W.Va. [11], 339 S.E.2d 697 (1985).

Implicit in this requirement "is the right to accept or reject the disciplinary sanction recommended by the Board." *Matter of Crislip*, 182 W.Va. at 638, 391 S.E.2d at 85.

■ In the case before us, Magistrate Eplin contends that the facts have not been proved by clear and convincing evidence. We disagree. Magistrate Eplin's version of the facts differ in significant respects from that of Sergeant Adkins, Assistant Prosecutor Hatcher's, Mr. Homonai's defense counsel and Mr. Homonai's deposition testimony.[4] Furthermore, Magistrate Eplin's explanation of how he was granted permission to dispose of the Homonai case by a phantom magistrate not assigned to the case strains credulity to its limit.

■ It is clearly established that a magistrate can violate Canon 3 of the Judicial Code of Ethics by failing to adhere to court rules or administrative procedures. As we stated in syllabus point 5 of *Matter of Crislip, supra:* "A magistrate's violation of court rules or related administrative procedures can result in disciplinary action." Canon 3 can also be violated when a magistrate makes an *ex parte* dismissal of a traffic violation without good cause being shown. As we stated in syllabus point 4 of *Matter of Crislip, supra:* "An *ex parte* dismissal by a magistrate of a criminal or civil case, without authorization by statute or rule or without other good cause shown, is a violation of Canon 3 of the Judicial Code of Ethics."

We conclude, after reviewing the entire record, that the allegations against Magistrate Eplin have been proven by clear and convincing evidence. By his favorable treatment to Mr. Homonai in response to a state senator's inquiry, Magistrate Eplin failed to uphold the high standards of in-

---

he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.
....
C. Disqualification
(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

4. Mr. Homonai was not available to testify at the hearing before the Board. In the interest of fairness, we granted Magistrate Eplin's request to depose Mr. Homonai and we have considered that testimony.

It is noteworthy that Magistrate Eplin explained why he permitted Mr. Homonai to enter a guilty plea without defense counsel's presence in very concrete terms. He explained that Mr. Homonai advised him that defense counsel would require an extra $300.00 for a second court appearance. Both Mr. Homonai and his defense counsel testified that defense counsel was paid in full for all proceedings at the time he was retained, and that further payment was not an issue in counsel's non-appearance on April 3, 1990.

**136**

tegrity and independence required of the judiciary by Canon 1 of the Judicial Code of Ethics. By intervening on Mr. Homonai's behalf and attempting to persuade Sergeant Adkins to dismiss and reduce the charges, and enticing assistant prosecutor Brown to agree to the plea agreement by falsely stating that prosecutor Hatcher had agreed to the deal previously, Magistrate Eplin failed to avoid impropriety and the appearance of impropriety in violation of Canon 2 of the Judicial Code of Ethics. Through circumvention of normal magistrate court procedures in an attempt to curry favor with a state senator, Magistrate Eplin was swayed by a partisan interest or fear of criticism in violation of Canon 3(A)(1). Magistrate Eplin also violated Canon 3(A)(1) by his *ex parte* dismissal of the "no insurance" charge without good cause being shown, thereby failing to remain faithful to the law and failing to maintain professional competence. Magistrate Eplin's disregard for the interests of the victim, the complaining officer, and the State by his authorization of the plea agreement without the input of those legally interested parties was a violation of Canon 3(A)(4). Finally, through his failure to disqualify himself after intervening on behalf of Mr. Homonai with Sergeant Adkins, Magistrate Eplin allowed his impartiality to be questioned in violation of Canon 3(C)(1).

We find the recommended penalty of six months' suspension without pay appropriate under the circumstances. Therefore, we have determined that Magistrate Eplin should be suspended without pay for six months and be required to pay the costs of the proceeding.

Six-month suspension.