423 S.E.2d 902

**In the Matter of Ira ATKINSON, Jr., Magistrate of Wood County.**

**No. 20892.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 6, 1992.

Decided Nov. 13, 1992.

294

Charles R. Garten, Charleston, for Judicial Investigation Com'n.

Harry G. Deitzler, Charleston, for Magistrate Atkinson.

PER CURIAM:

This is a review of a judicial disciplinary proceeding against Magistrate Ira Atkinson. The Judicial Hearing Board ("Board") found that the Judicial Investigation Commission (Commission) had not proven its allegation that Magistrate Atkinson had violated Canons 1, 2, 3A(1), 3A(4) and 3C(a) of the Judicial Code of Ethics by clear and convincing evidence. The allegations were based upon the Commission's contention that Magistrate Atkinson had given special treatment to a criminal defendant who he allowed to plead guilty to an offense lesser than the actual crime. Because it found that the Commission had failed to prove its allegations by clear and convincing evidence, the Board recommended that the complaint filed by the Commission against Magistrate Atkinson be dismissed. After conducting an independent review of the record, we agree and accept the recommendation of the Board.

This complaint against Magistrate Atkinson arose out of his involvement in a criminal case filed by the State of West Virginia against James Brock, Jr. Mr. Brock was arrested and charged with driving under the influence of alcohol, first offense, by Deputy Sheriff Brent M. Gandee of the Wood County Sheriff's Department, on May 4, 1991.[1] A trial date was set for June 4, 1991. Magistrate Margaret Monroe was assigned Mr. Brock's case.

To determine whether Mr. Brock had any previous convictions for driving under the influence of alcohol, Deputy Gandee conducted an investigation of Mr. Brock's driving record. Such an investigation was necessary to determine whether Mr. Brock had violated the enhancement provisions of the West Virginia drunk driving law embodied in *W.Va.Code*, 17C–5–2 [1986].[2] Deputy

---

1. The defendant, James Brock, Jr., was also charged with speeding and driving without an operator's license.

2. *W.Va.Code,* 17C–5–2 [1986] provides, *inter alia,* that the minimum criminal penalty for driving under the influence of alcohol, first offense shall be twenty-four hours incarceration

and a $200.00 fine. The minimum criminal penalty for a second offense is six months imprisonment and a $1,000.00 fine. The minimum criminal sanction for a third and all subsequent violations is one-year imprisonment and a $3,000.00 fine. Administrative sanctions, such as revocation of driver's license privileges,

Gandee received an abstract from the Department of Motor Vehicles on May 9, 1991, informing him that Mr. Brock had been convicted of drunk driving on one prior occasion. On May 28, 1991 Deputy Gandee received confirmation of Mr. Brock's prior drunk driving conviction through certified court records from Cabell County, the location of the first offense. Deputy Gandee elected not to act upon this information until June 3, 1991, the day before Mr. Brock's scheduled trial.

On June 3, 1991, Deputy Gandee appeared in Wood County Magistrate Court before Magistrate Charles E. Plum and sought to "enhance" the original charge against Mr. Brock by having a new warrant, charging driving under the influence of alcohol, second offense, issued against Mr. Brock. Magistrate Plum reminded Deputy Gandee that the original warrant would have to be dismissed before the enhanced warrant was served upon Mr. Brock. Deputy Gandee, however, did not immediately withdraw the original warrant, and instead intended to wait until the following day, June 4, 1991, the day of Mr. Brock's scheduled trial, to serve it. Unfortunately, due to Deputy Gandee's delay, Mr. Brock appeared before Magistrate At-

kinson on June 3, 1991, and plead guilty to the lesser charge.[3]

Mr. Brock arrived in magistrate court on the morning of June 3, 1991, seeking to enter a guilty plea in his case. He was referred to Magistrate Atkinson, who was performing "intake" duties that morning. Mr. Brock explained to Magistrate Atkinson that he had an important doctor's appointment the following day, the day of the trial. Magistrate Atkinson explained to Mr. Brock that Magistrate Monroe had been assigned Mr. Brock's case, and that because she was presiding over a civil trial at that time, she could not take his plea. However, because of Mr. Brock's predicament, Magistrate Atkinson offered to contact Magistrate Monroe and secure her permission to allow him to accept Mr. Brock's plea.[4]

Magistrate Atkinson contacted Magistrate Monroe during a recess in her civil trial and she acquiesced to Magistrate Atkinson's request. Magistrate Atkinson then accepted and entered Mr. Brock's guilty plea to the initial charge of driving under the influence of alcohol, first offense.[5] Magistrate Atkinson gave Mr. Brock the minimum sentence for this con-

are provided for in *W.Va.Code*, 17C–5A–2 [1992].

**3.** At the hearing before the Board, Magistrate Monroe testified that Deputy Gandee had not followed normal procedure when he failed to withdraw the original charge, and failed to notify her of the enhanced warrant. Magistrate Monroe testified as follows:
> [Monroe]: [T]here was no notification to my office that there would be an additional. warrant or that this one would be dismissed. There was no notification to my office.
> [Q.]: Which normally that's what you're used to?
> [Monroe]: Well, that's what should have happened.

**4.** Court procedure required that Magistrate Atkinson receive Magistrate Monroe's approval before acting on any case assigned to Magistrate Monroe.

**5.** Syllabus point 5 of *Matter of Crislip*, 182 W.Va. 637, 391 S.E.2d 84 (1990) states: "A magistrate's violation of court rules or related administrative procedures can result in disciplinary action." Without commenting on the correctness of the procedures followed, we note from the testimony it is undisputed that when

Magistrate Atkinson accepted the guilty plea of Mr. Brock, the form used to accept Mr. Brock's guilty plea was neither dated nor signed by any witness to the guilty plea. Magistrate Monroe testified before the Board that she would have dated the plea and had a witness to it, but she nonetheless believed that Magistrate Atkinson had acted appropriately.

Also, although Mr. Brock had previously retained counsel in his case, he entered his plea *pro se*. Magistrate Atkinson did not require Mr. Brock to sign a "waiver of counsel" form. Nor did Magistrate Atkinson inform the county prosecutor's office of the plea beforehand. In this regard, Magistrate Monroe evaluated Magistrate Atkinson's conduct with approval. She stated:
> I see that Magistrate Atkinson did absolutely nothing wrong. As far as [Mr. Brock's] case is concerned, he was totally correct in his procedure and I had—it was my case and I had no fault with him whatsoever doing it.
> He did it just like he would have if it had been his case. We're individuals and we have our own little things that we may do differently. But basically I was satisfied that the case was well-handled.

Our disposition of this case should not be interpreted as validating Magistrate Monroe's evaluation of Magistrate Atkinson's conduct in

viction.[6] The foregoing facts were corroborated by Magistrate Monroe, Magistrate Atkinson, his assistant, and Mr. Brock.

Magistrate Atkinson contends that after accepting Mr. Brock's guilty plea, he went in search of a cup of coffee. During this search, he walked past Magistrate Plum's office and heard Deputy Gandee and Magistrate Plum discussing the enhanced warrant against Mr. Brock. Magistrate Atkinson contends he then informed Deputy Gandee that he had already accepted Mr. Brock's plea to the initial charges. Magistrate Plum recalled this visit by Magistrate Atkinson, but could not remember the content of the discussion between Magistrate Atkinson and Deputy Gandee.

Testifying for the Commission, Deputy Gandee admitted that he did not withdraw the initial charge against Mr. Brock, despite seeking and receiving the enhanced warrant. However, he denies that Magistrate Atkinson informed him that Mr. Brock's guilty plea had already been accepted when he received the enhanced warrant. Instead, Deputy Gandee contends that he phoned Magistrate Atkinson in the late afternoon of June 3, because he had heard there could be a problem with the enhanced warrant. He alleges that after informing Magistrate Atkinson of the enhanced warrant, Magistrate Atkinson informed him that a plea had not and would not be taken from Mr. Brock on the initial charges. Magistrate Atkinson denies that this phone conversation occurred.

In its case against Magistrate Atkinson, the Commission introduced the testimony of Jane Drake, a magistrate's assistant who recalled that Mr. Brock appeared in the magistrate court in mid-May, 1991, seeking Magistrate Atkinson. Mrs. Drake informed Mr. Brock that Magistrate Atkinson was absent, and Mr. Brock requested

that Mrs. Drake inform the magistrate that "James Brock was here and he will know what to do." Mr. Brock could not recall this conversation.

The Commission also presented the testimony of Patrick Wolford, a Wood County Correctional Officer who processed Mr. Brock when Mr. Brock completed his twenty-four hour jail sentence. Officer Wolford completed a "descriptive data sheet" concerning Mr. Brock at that time. For the data sheet, Officer Wolford completed a section designed to name some friends of Mr. Brock. Two names were listed, one of whom was Magistrate Atkinson. Mr. Brock contends that Officer Wolford suggested he name lawyers or doctors known to him, not merely friends, and therefore he chose Magistrate Atkinson, who was a friend of Mr. Brock's father. Both Mr. Brock and Magistrate Atkinson testified that although they knew each other, they were not "friends."[7]

After adducing testimony in this matter, the Board issued its proposed disposition to this Court on July 8, 1992. Among the Board's findings of fact were the following:

14. Magistrate Atkinson was not aware, and could not have been aware, that Deputy Sheriff Gandee had enhanced the charges against Defendant James Brock, Jr.

15. Magistrate Atkinson did not show favoritism to Defendant James Brock, Jr.

The Board concluded that although Magistrate Atkinson and Mr. Brock were acquainted prior to Mr. Brock's guilty plea, such acquaintance did not, in and of itself, prejudice Magistrate Atkinson's participation in Mr. Brock's case. Therefore, because it had found no evidence that Magistrate Atkinson treated Mr. Brock with favoritism, the Board found that the charges against the magistrate had not

regard to the foregoing administrative procedures.

6. Magistrate Atkinson had explained to Magistrate Monroe his sentencing plans when he secured her permission to take Mr. Brock's plea. Magistrate Atkinson testified before the Board that he customarily awards the minimum sentence in cases of driving under the influence of alcohol, first offense.

7. Magistrate Atkinson had this to say about Mr. Brock's father:

Well, we're friendly. I mean in the political—you want to realize I ran for magistrate, this will be the third time.

He has a element of friends that I don't alienate, but that doesn't mean that he's in my home or he has been to dinner or that type of thing.

been proven by clear and convincing evidence. Accordingly, the Board recommends that we dismiss this complaint.

In *Matter of Eplin*, 187 W.Va. 131, 136, 416 S.E.2d 248, 252 (1992), we have stated:

The standard of evidence necessary to prove allegations of a complaint in a judicial disciplinary proceeding was stated in syllabus point 4 of *In re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983):

Under Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplinary proceeding "must be proved by clear and convincing evidence."

In making a determination whether the allegations have been proved by 'clear and convincing evidence,' this Court is required to make an independent evaluation of the Board's findings and recommendations. We stated this requirement in syllabus point 1 of *Matter of Crislip*, 182 W.Va. 637, 391 S.E.2d 84 (1990):

" ' "The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings." Syl. pt. 1, *West Virginia Judicial Inquiry Commission v. Dostert* [165 W.Va. 233], 271 S.E.2d 427 (W.Va.1980).' Syllabus, *Matter of Gorby*, [176] W.Va. [11], 339 S.E.2d 697 (1985)."

Implicit in this requirement 'is the right to accept or reject the disciplinary sanction recommended by the Board.' *Matter of Crislip*, 391 S.E.2d at 85.

In this case the Commission asserts that the evidence clearly and convincingly shows that Magistrate Atkinson treated Mr. Brock favorably when he allowed Mr. Brock to plead guilty to the original charges. This allegation of favoritism suggests that Magistrate Atkinson was aware of the enhanced warrant at the time he allowed Mr. Brock to enter a guilty plea to the earlier charge. The weight of the evidence, however, clearly supports Magistrate Atkinson's assertion that he was unaware of the earlier charge at that time. It

is clear from the testimony of Magistrate Monroe, Magistrate Atkinson, his assistant, and Mr. Brock, that the guilty plea was entered in the morning of June 3. Sometime thereafter, or perhaps even simultaneously, Deputy Gandee sought and received the enhanced warrant from Magistrate Plum. There is simply no way Magistrate Atkinson could have known of the enhanced warrant prior to accepting Mr. Brock's guilty plea.[8] Without Magistrate Atkinson's knowledge of the enhanced warrant, the complaint against him must fail.

After conducting an independent review of the record, we find that the Commission has not proved its complaint by clear and convincing evidence. Therefore, we adopt the proposed disposition of this case suggested by the Judicial Hearing Board in its July 8, 1992 order, and dismiss this complaint.

Complaint dismissed.

**8.** This is further compounded by the fact that Deputy Gandee failed to take any action to withdraw the original warrant.