438 S.E.2d 549

**In the Matter of Leonard CODISPOTI, Magistrate for Logan County.**

**No. 21522.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 5, 1993.

Decided Dec. 9, 1993.

**370**

Charles R. Garten, Charleston, for the Judicial Investigation Com'n of West Virginia.

Kelly Gilmore Codispoti, Logan, for Leonard Codispoti.

PER CURIAM:

This is a judicial disciplinary proceeding instituted by the Judicial Investigation Commission of West Virginia against Leonard Codispoti, a magistrate in Logan County. The complaint alleges that during Kelly Gilmore Codispoti's 1992 primary campaign for circuit court judge, Magistrate Codispoti, the candidate's husband, collected and disseminated material adverse to ·her opponent. The Judicial Hearing Board by a 7–1 vote

found that Magistrate Codispoti's actions violated Canons 2, 3A(6) and 7B(1) of the *Judicial Code of Ethics* [1989].[1] The Board recommends that Magistrate Codispoti be suspended for one month with loss of pay and that he pay the costs of the Judicial Investigation Commission and the Judicial Hearing Board. Based on this Court's independent review of the record, we find that although Magistrate Codispoti did not violate Canon 3A(6), his actions violated Canons 2 and 7B(1) and, therefore, we impose the sanctions of a public censure and payment of costs.

During the 1992 primary election, Magistrate Codispoti ran for reelection and his wife, Kelly Gilmore Codispoti, was a candidate for circuit judge in Logan County.[2] Roger Perry, who eventually won the election, was also a candidate for circuit judge. Before serving as circuit judge, Mr. Perry was an assistant prosecuting attorney in Boone County where he was involved in two controversial matters. One matter involved the murder of two elderly ladies and the other involved a fatal accident between a coal truck and an automobile that killed four members of one family.

Seeking information about the murder case and the identity of murder victims' families, Magistrate Codispoti approached at least one lawyer in Boone County and the editor of *The Coal Valley News*, a Boone County newspaper. The editor photocopied various newspaper articles and gave them to Magistrate Codispoti.

Based on the information he gathered, Magistrate Codispoti contacted a granddaughter of one of the murder victims and asked her opinion about the handling of her grandmother's murder case.[3] Later he went to the granddaughter's job site and showed her a typewritten letter containing her opinion. When Magistrate Codispoti returned with a statement containing her opinion, the granddaughter signed it. Apparently, during his visits with the granddaughter, Magis-

---

1. Although the *Judicial Code of Ethics* [1989] was superseded by the *Code of Judicial Conduct*, effective January 1, 1993, the allegations concerning Magistrate Codispoti arose before the effective date of the *Code of Judicial Conduct*.

2. Mrs. Codispoti is her husband's counsel in this matter.

3. *See State v. Walker*, No. 930610 (W.Va., *appeal denied* (4–1) July 14, 1993).

trate Codispoti was accompanied by his brother-in-law, Randy Redmond.

On May 3, 1992 and May 10, 1992, the two Sundays immediately preceding the primary election, the *Logan Banner*, the local newspaper, ran an advertisement criticizing Mr. Perry's handling of the murder case.[4] The advertisement said that it had been paid for by the murder victim's granddaughter. Although the granddaughter acknowledged that the advertisement was similar to the statement that had been presented during Magistrate Codispoti's visit, she denied both that the signature in the advertisement was hers and that she paid for the advertisement.

An advertisement critical of Mr. Perry's decision not to prosecute the coal truck driver involved in the fatal accident also appeared in the *Logan Banner* on May 10, 1992. The advertisement said that the murder victim's granddaughter had paid for the advertisement.[5] The murder victim's granddaughter denied both paying for this advertisement as well as having any information related to the fatal accident.

The third advertisement published on May 10, 1992 by the *Logan Banner* concerned Mr. Perry and the murder cases. Apparently this advertisement was to rebut Mr. Perry's radio promotions. The advertisement ended with the granddaughter's signature and stated that she had paid for it; both of which the granddaughter denied. When Magistrate Codispoti requested the granddaughter to appear on a radio show shortly before the election to talk about Mr. Perry, she refused. Magistrate Codispoti denies asking her to appear.

Mrs. Codispoti's June 12, 1992 campaign financial statement under "In–Kind Contributions" listed a $300.00 donation from Marie Redmond, the magistrate's sister, on May 3, 1992 for a "Campaign Advertisement" and a $900.00 donation from Randy Redmond, the magistrate's brother-in-law, on May 10, 1992 for a "Campaign Advertisement." No other information was presented about the publishing of the critical advertisements.

During the 1992 primary campaign, Magistrate Codispoti encouraged several people to vote for his wife. When a neighbor and businessman placed a sign near his home supporting the incumbent Judge J. Ned Grubb, Magistrate Codispoti suggested that his wife would be a better choice for circuit

4. The following advertisement appeared in the *Logan Banner* on both May 3 and 10, 1993:

### EIGHTEEN HUNDRED REASONS "NOT TO" VOTE FOR ROGER PERRY

To The Voters of Logan County:

I want the voters of Logan County to know that I do not feel that Roger Perry would make a good judge if his conduct as an assistant prosecuting attorney in Boone County is any measure of his ability. I am the granddaughter of Faye Jarrell and a friend of Dorothy Daniels. Both were brutally murdered by the Walker boys. These women had just returned from a wake at a funeral home when the Walker boys robbed them (even of their wedding bands), stabbed them 37 times, partially scalped them, and beat their bodies unmercifully.

Roger Perry played a role in the prosecution of the murders and allowed Paul Walker to enter a plea that would make him eligible for parole in less than 20 years. This was done against the wishes of both families. We begged that the prosecution not allow any plea where the Walker boys would ever get out of prison.

If his conduct in the Walker case is considered by you, the voters of Logan County, you will not want to cast your vote for a man whose legal representation of the State of West Virginia failed the families of these two elderly souls. I am sure that you, the voters of Logan County, want a judge to protect your families, young and old alike.

Many citizens of Boone County joined me in my efforts to have him removed as assistant prosecuting attorney due to his actions in the Walker case. A petition of more than 1800 signatures calling for the dismissal of Roger Perry as assistant prosecutor was obtained from the people of Boone County.

With Great Concern for Logan County,
/s/Anna Abshire

This Advertisement Paid For
By Anna Abshire

5. On Sunday, May 10, 1992, the *Logan Banner* ran a political advertisement with the headline "Entire Family Wiped Out;[sic]." The advertisement's first section said the coal truck driver, who allegedly was "clearly left of center at the time of the accident" was "[c]harged in [f]our [d]eaths." The second section said that about 6 months after the fatal accident, Roger Perry, the prosecuting attorney, dropped the charges. The advertisement concluded by quoting Jerry Cook, a lawyer representing the accident victims' families, saying, "It's a shame but we just don't have any prosecution in this county.,[sic]"

judge.[6]

The Board heard testimony from Judge Perry, the former managing editor of *The Coal Valley News*, the murder victim's granddaughter, two lawyers contacted by Magistrate Codispoti during the primary and Magistrate Codispoti. Although Magistrate Codispoti acknowledges he visited the murder victim's granddaughter, he denies asking her to appear on the radio, denies paying for the advertisements, denies preparing either the granddaughter's first letter or the statement eventually published, denies preparing the advertisements and denies authorizing the publishing of the advertisements.

Based on the record the Board found that Magistrate Codispoti's campaign activities on behalf of his wife violated Canons 2, 3A(6) and 7B(1) of the *Judicial Code of Ethics* [1989]. By a 7–1 vote the Board recommended that Magistrate Codispoti be suspended for one month, without pay, and be required to pay the costs of the proceeding.

### I

■ In Syl. Pt. 4, *In re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983), we said:

Under Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplinary proceeding "must be proved by clear and convincing evidence."

*See* Syl. Pt. 1, *In the Matter of Hey*, 188 W.Va. 545, 425 S.E.2d 221 (1992); *In the Matter of Crislip*, 182 W.Va. 637, 391 S.E.2d 84 (1990); *In the Matter of Karr*, 182 W.Va. 221, 387 S.E.2d 126 (1989).

■ This Court makes an independent evaluation of the record and the recommendations of the Committee. In Syl. Pt. 1, *In re Pauley*, *supra*, we said:

"The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings." Syl. pt. 1, *West Virginia Judicial*

*Inquiry Commission v. Dostert*, [165 W.Va. 233], 271 S.E.2d 427 (W.Va.1980). In Syl. Pt. 1, *In the Matter of Karr*, *supra*, we said:

When the language of a canon under the *Judicial Code of Ethics* is clear and unambiguous, the plain meaning of the canon is to be accepted and followed without resorting to interpretation or construction.

### A.

■ In the present case, the Commission alleges that Magistrate Codispoti's activities violated Canons 2 and 7B(1) of the *Judicial Code of Ethics* [1989]. Canon 2 states:

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.

In *Matter of Gorby*, 176 W.Va. 11, 14, 339 S.E.2d 697, 700 (1985) (Canon 2 was violated by a magistrate's injudicious demeanor and behavior at a football game), we quoted Canon 2's commentary and noted that a judicial officer should avoid impropriety and the appearance of impropriety in all his activities. The canon prohibits a judge from lending the prestige of his office to advance the private interest of others as well as conveying or permitting others to convey the impression that they are in a special position of influence.

Canon 7B(1) of the *Judicial Code of Ethics* restricts the campaign conduct of all candidates for judicial office, including an incumbent judge. Canon 7B(1) states:

B. Campaign Conduct.

(1) A candidate, including an incumbent judge, for a judicial office that is to

---

**6.** *See Committee on Legal Ethics v. Grubb*, 187    W.Va. 608, 420 S.E.2d 744 (1992).

be filled by public election between competing candidates:

(a) should maintain the dignity appropriate to judicial office, and should encourage members of his family to adhere to the same standards of political conduct that apply to him;

(b) should prohibit public officials or employees subject to his direction or control from doing for him what he is prohibited from doing under this Canon; and except to the extent authorized under subsection B(2), he should not allow any other person to do for him what he is prohibited from doing under this Canon;

(c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; announce his views on disputed legal or political issues; or misrepresent his identity, qualifications, present position, or other fact.

In *In the Matter of Hill,* 190 W.Va. 165, 437 S.E.2d 738 (1993) (complaint involving judge's endorsement of a candidate) we noted that "Canon 7B(1) and (2) speaks more generally to campaign activities deemed inappropriate for judges to engage in. . . ." *Hill, id.,* 190 W.Va. at 168, 437 S.E.2d at 741. *See In re: Turner,* 573 So.2d 1 (Fla.1990) (circuit judge publicly reprimanded for active involvement in son's campaign, violations of Canons 1, 2 and 7A); *Matter of Katic,* 549 N.E.2d 1039 (Ind.1990) (judge suspended for 30 days without salary for partisan political activity, violations of Canons 2 and 7B); *Inquiry Concerning a Judge, DeFoor,* 494 So.2d 1121 (Fla.1986) (judge publicly reprimanded for actively participating in two election campaigns). *See also In re Code of Jud. Conduct,* 603 So.2d 494 (Fla.1992) (the canons' prohibition against a judge publicly endorsing a candidate for public office constitutional.)

In the present case, Magistrate Codispoti was directly, actively and heavily involved in his wife's campaign for circuit judge. The record presents clear and convincing evidence that the magistrate sought information about his wife's opponent, directly contacted a murder victim's granddaughter seeking disparaging information, and facilitated the publishing of advertisements that misrepresented who paid for them, whose opinion was presented and who signed them. Although the record does not show who was directly responsible for publishing the advertisements, Magistrate Codispoti's involvement in the advertisements is plain.[7]

### B.

■ The Commission also alleges that Magistrate Codispoti's activities violated Canon 3A(6) of the *Judicial Code of Ethics.* Canon 3A(6) states:

The judicial duties of a judge take precedence over all his other activities. His judicial duties include all of the duties of his office prescribed by law. In the performance of these duties, the following standards apply:

A. Adjudicative Responsibilities . . .

(6) A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to his direction and control. This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court.

In *Hey, supra* 188 W.Va. at 547–49, 425 S.E.2d at 223–24 we said "that the test for judicial impropriety under Canon 3A(6) is whether the judge's public comments on a specific case raise a reasonable question as to impartiality." In *Hey,* we noted the underlying case could be a " 'pending or impending proceeding in any court.' " *Hey id.* 188 W.Va. at 548, 425 S.E.2d at 224.

The Board found that by publishing the advertisement concerning the fatal accident, Magistrate Codispoti violated Canon 3A(6). However, because the Board failed to prove, by clear and convincing evidence that Magistrate Codispoti caused the advertisement to

---

**7.** The record contains no testimony from an employee of the *Logan Banner,* the newspaper in which the advertisements appeared, or from Mr. or Mrs. Redmond, the Magistrate's brother-in-law and sister, who allegedly paid for the advertisements.

be published, we cannot find a violation of Canon 3A(6). Moreover, the classification of the fatal accident as a "pending or impending proceeding" is at best dubious because by the 1992 primary, the charges in the fatal accident matter had been dismissed for almost two years. (The charges were dropped on June 27, 1990).

Although we concur with the Board that Magistrate Codispoti violated Canons 2 and 7B(1) of the *Judicial Code of Ethics* [1989], we find that the record does not support the allegation of a violation of Canon 3A(6). We find that Magistrate Codispoti's conduct in support of his wife's candidacy was public and sufficiently serious to merit the sanctions of a public censure and payment of costs.

For the above stated reasons, we adopt only the sanction of payment of costs that was recommended by the West Virginia Judicial Hearing Board and we also hold that Magistrate Codispoti should be publicly censured.

Public Censure and Costs.