452 S.E.2d 24

**In the Matter of Honorable John HEY, Judge, Circuit Court of Kanawha County.**

No. 21676.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 13, 1994.

Decided Nov. 18, 1994.

David R. Janes, Tharp, Liotta & Janes, Fairmont, Special Judicial Disciplinary Counsel.

John W. Swisher, Charleston, for Honorable John Hey, Judge, Circuit Court of Kanawha County.

CLECKLEY, Justice:

■ This judicial disciplinary proceeding arises from a determination of the Judicial Investigation Commission (Commission) that probable cause existed to file a complaint against the Honorable John Hey, Judge of the Circuit Court of Kanawha County, based upon purported violations of Canon 1, Canon 2A, and Canon 3A(6) of the West Virginia Judicial Code of Ethics.[1] After hearing all the evidence presented, a Special Judicial Hearing Board (Special Board) convened for Judge Hey's case determined that the evidence was insufficient to support the Commission's complaint. The Special Board recommended the dismissal of the Commission's complaint against Judge Hey.

Before this Court, Judge Hey argues that the evidence against him was insufficient as a matter of law and that under the circumstances of this case any decision adverse to him would violate his rights under the First Amendment to the United States Constitution. After an independent evaluation of the record, we find that the evidence does not provide clear and convincing proof of violations of any of the designated Canons in the Code of Judicial Conduct or the Judicial Code of Ethics. Additionally, we find that a contrary result would constitute an infringement of Judge Hey's rights that are protected by the First Amendment to the United States Constitution and by Section 7 of Article III of the West Virginia Constitution. Therefore, we adopt the recommendation of

---

1. The Judicial Code of Ethics was superseded by the Code of Judicial Conduct, which was adopted on October 21, 1992, and became effective on January 1, 1993. Because the alleged violations occurred prior to the adoption of the Code of Judicial Conduct, we will consider this case under the Judicial Code of Ethics. Although the old Code is controlling, we believe that in cases such as this, the individual charged deserves the benefit of any new expressions of law that have been formulated since the incident in question occurred. There are some significant differences between the Judicial Code of Ethics and the Code of Judicial Conduct. While there were only minor changes in Canons 1 and 2, Canon 3 was substantially reorganized. Notably, Canons 3B(7) and 3B(9) of the Code of Judicial Conduct now contain some of the same language that previously existed in Canon 3A(6) of the Judicial Code of Ethics.

the Special Board and order the complaint dismissed.

## I.

On December 17, 1992, this Court adopted the recommendation of the Judicial Hearing Board (Hearing Board) in the case of *Matter of Hey*, 188 W.Va. 545, 425 S.E.2d 221 (1992). As a result, Judge Hey was publicly censured for discussing on a national television program, "Crossfire," the details of a case pending before a West Virginia Court.[2] On the day following his censure, Judge Hey appeared on a talk show on a local radio station and discussed various issues, including his censure and the behavior of some members of the Hearing Board.

During the radio broadcast, Judge Hey mentioned that one of the members of the Hearing Board that recommended his censure was the wife of the president of the University of Charleston and that this particular Hearing Board member walked out while the Hearing Board reviewed the videotape of "Crossfire". Judge Hey remarked that she "[d]idn't even view 15 minutes of it so I'm not done with her yet. I want her to understand that. I hope she or one of her friends are listening."

Judge Hey was referring to Hearing Board member, Dr. Janet Welch. Although Dr. Welch did not actually hear the radio interview, friends and various other individuals fearing for Dr. Welch's welfare informed her of Judge Hey's statements and warned her to be careful. Because of the warnings, Dr. Welch filed a complaint against Judge Hey with the Commission on December 30, 1992.

In response to the complaint, Judge Hey asserted that his radio comments were not meant as a threat to Dr. Welch. Furthermore, Judge Hey argued that because the comments were not made in the course of his official duties, they gained First Amendment protection.

After investigating Dr. Welch's complaint, the Commission determined that there was probable cause to file a complaint with the Hearing Board. The Commission filed the complaint on April 13, 1993. In order to avoid a potential conflict of interest, the Special Board was convened to hear the complaint against Judge Hey. The Special Board held a full hearing on the case on March 29, 1994.

At the hearing, Judge Hey testified that his radio comments were intended to indicate that he would subpoena and depose Dr. Welch in a related civil proceeding pending against him. Judge Hey did not provide this explanation during the radio broadcast. Dr. Welch testified that she did not actually hear the radio program when Judge Hey made his comments, but instead became aware of the radio broadcast after a number of individuals questioned her about Judge Hey's comments at a Christmas party.

After hearing from Judge Hey, Dr. Welch, and various other witnesses, the Special Board concluded: "Although a circuit judge's conduct and speech is limited in many ways by the Code of Judicial Conduct, a circuit judge does not lose the full protection of the First Amendment Rights of the United States Constitution, especially when he is a party litigant." The Special Board voted 5–2 to dismiss the Canon 2 charges and voted 7–0 to dismiss the charges based on Canons 1 and 3. The Special Board recommended to this Court that the complaint against Judge Hey be dismissed.

## II.

■ Allegations in judicial disciplinary proceedings must be proved by clear and convincing evidence. In Syllabus Point 4 of *In Re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983), we made the following statement regarding the burden of proof:

"Under Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplin-

---

**2.** For other litigation arising from the first *Hey* case, see *Roush v. Roush*, 767 F.Supp. 1344 (S.D.W.Va.1991), *aff'd*, 952 F.2d 396 (4th Cir. 1991), *cert. denied*, 504 U.S. 913, 112 S.Ct. 1948, 118 L.Ed.2d 552 (1992). *See also Hey*, 188 W.Va. at 547 n. 1, 425 S.E.2d at 223 n. 1.

ary proceeding 'must be proved by clear and convincing evidence.' "

■ This Court must perform an independent evaluation of the Special Board's findings and recommendations in order to determine whether a particular allegation has been proven by clear and convincing evidence. *See In the Matter of Kaufman*, 187 W.Va. 166, 416 S.E.2d 480 (1992); *Matter of Crislip*, 182 W.Va. 637, 391 S.E.2d 84 (1990); *In re Markle*, 174 W.Va. 550, 328 S.E.2d 157 (1984); *In re Pauley, supra; West Virginia Judicial Inquiry Comm'n v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980). The term "independent evaluation" is synonymous with a *de novo* or plenary review of the record. This Court in *Matter of Hey* observed that "[i]mplicit in this requirement 'is the right to accept or reject the disciplinary sanction recommended by the Board.' " 188 W.Va. at 549, 425 S.E.2d at 225, *quoting Matter of Crislip*, 182 W.Va. at 638, 391 S.E.2d at 85.

■ The evidentiary support for the charges in this case stems from the stray ramblings of Judge Hey during a radio program interview. The evidence, although conflicting in part, can be summed up by the statement that no one offered any substantial or persuasive information from which it can be shown that Judge Hey's comments conveyed a physical or otherwise improper threat. As stated above, Dr. Welch testified that she did not hear the actual airing of the comments of Judge Hey. The only witness with firsthand knowledge who testified in support of the complaint was Karen Glazier. Essentially, Ms. Glazier felt that Judge Hey's comments were unprofessional, but she did not remember Judge Hey's comments as being of a threatening nature.

Some of the information sent to the Commission by Judge Hey included letters from Danny Jones, Don Cook, and Frank George Scherback, individuals who have performed radio interviews with Judge Hey.[3] All three agreed that Judge Hey is very outspoken and controversial; they denied, however, that he said anything inappropriate or "mean-spirited" about any individual or group of people. The letters of Don Cook and Danny Jones specifically deny that Judge Hey made any threatening comments directed to Dr. Welch.

### III.

■ Although we believe the evidence is insufficient to support the charges of ethical violations,[4] we directly address whether the

---

3. In fact, it is an interview with Judge Hey on Mr. Cook's morning radio talk show that is at the center of this litigation.

4. The facts here are substantially distinguishable from those cases in which this Court has found a violation of Canon 1. Canon 1 reads as follows:

"An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective."

*See Matter of Eplin*, 187 W.Va. 131, 416 S.E.2d 248 (1992) (magistrate accorded special treatment to a criminal defendant in order to curry favor with a state senator); *Matter of Boese*, 186 W.Va. 46, 410 S.E.2d 282 (1991) (in a series of harassing telephone calls between magistrate and ex-husband, magistrate used "obscene and abusive language"; some of these conversations occurred while the magistrate was on duty and in her office); *Matter of Gainer*, 185 W.Va. 8, 404 S.E.2d 251 (1991) (magistrate found to have squeezed breasts of a fifteen-year-old student employee). To the contrary, where the evidence has been questionable and conflicting, this Court has not hesitated to find a failure of proof. *See Matter of Atkinson*, 188 W.Va. 293, 423 S.E.2d 902 (1992) (evidence insufficient to establish knowledge of wrongdoing by magistrate).

The case against Judge Hey under Canon 2A is equally deficient. Canon 2A provides: "A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." In reference to Canon 2A, we have noted in *Matter of Gorby*, 176 W.Va. 11, 14, 339 S.E.2d 697, 700 (1985), *quoting* Syllabus Point 7, *Matter of Bennett*, 403 Mich. 178, 267 N.W.2d 914 (1978):

" '[A] judge, whether on or off the bench, is bound to strive toward creating and preserving the image of the justice system as an independent, impartial source of reasoned actions and decisions. Achievement of this goal demands that a judge, in a sense, behave as though he is always on the bench.' "

Our prior cases have found violations of Canon 2A where the evidence was clear and convincing and the conduct complained of was egregious. *See Matter of Codispoti*, 190 W.Va. 369, 438 S.E.2d 549 (1993) (magistrate helped to create

First Amendment rights of Judge Hey are implicated in these proceedings. In doing so, we are mindful of the wisdom expressed in *Ashwander v. Tennessee*, 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688,.710–11 (1936) (Brandeis, J., concurring), which admonished that courts must not unnecessarily decide constitutional questions. If a case can be decided by the application of general law, a court should forego deciding it on constitutional grounds. Ordinarily, we would adhere to this precept. The constitutional question before us, however, is one of vital importance because of its potential chilling effect on judicial expression, and the question is likely to be the subject of numerous future appeals.[5] Additionally, because we believe freedom of speech is a fundamental personal right, *see Schneider v. New Jersey*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939), and because we have a constitutionally imposed duty to regulate our court system and its judges, W.Va. Const. art. VIII, §§ 1, 3, & 8, we address the issue raised by Judge Hey to provide guidance for our disciplinary committees. *See Israel v. West Virginia Secondary*

*Schools Activities Comm'n*, 182 W.Va. 454, 457, 388 S.E.2d 480, 483 (1989), *quoting State v. Gleason*, 404 A.2d 573, 578 (Me.1979) (" 'while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public' ").

■ Unquestionably, it is within this Court's power to discipline judges. W.Va. Const. art. VIII, § 8. *See also Committee on Legal Ethics v. Karl*, 192 W.Va. 23, 449 S.E.2d 277 (1994). But in doing so, we have a corresponding duty not to ignore judges' constitutionally protected rights. The competition between the demands of government and the free speech interests of its servants has been before us in other contexts. In our cases on public employees' speech, we have recognized that the government as an employer has special interests that can support narrowly tailored limitations on employees' expressive and political activities. *E.g., Weaver v. Shaffer*, 170 W.Va. 107, 290 S.E.2d 244 (1980). At the same time, our cases confirm that public employees retain a con-

---

misleading campaign advertisements for his wife's circuit judge campaign); *Matter of Boese, supra* (magistrate violated Canons 1, 2A, and 2B as a result of a series of harassing telephone calls between magistrate and her ex-husband); *Matter of King*, 184 W.Va. 177, 399 S.E.2d 888 (1990) (family law master violated Canon 2A by making misrepresentations regarding status of decision); *Matter of Gorby, supra* (magistrate shouted, used foul and abusive language, and may have used even physical force against other people at a football game).

Unlike the words of Judge Hey, the above conduct was either deceptive, illegal, or a flagrant abuse of power. More significantly, the evidence against the judicial officer was substantial.

Canon 3A(6) of the Judicial Code of Ethics states:

"A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to his direction and control. This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court."

In *Matter of Hey*, 188 W.Va. at 547–48, 425 S.E.2d at 223–24, we stated "that the test for judicial impropriety under Canon 3A(6) is whether the judge's public comments on a specific case raise a reasonable question as to impartiality."

*See also Matter of Codispoti*, 190 W.Va. at 373, 438 S.E.2d at 553. We also stated in *Matter of Hey* that Canon 3A(6) would be violated if a judge's public comments involved a case pending or impending in any court in West Virginia. 188 W.Va. at 548, 425 S.E.2d at 224.

The Commission based their complaint against Judge Hey on the fact that he made comments about this Court's decision in the previous *Hey* case and the comments about Dr. Welch. None of the comments made by Judge Hey during the radio broadcast could possibly constitute a violation of Canon 3A(6) because the comments were not directed to a case that was pending or impending before any court. In fact, not only was Judge Hey a party to the case that he mentioned, but the case had been fully resolved by this Court.

5. The inquiry should be whether the facts alleged show that "there is a substantial controversy, between parties having adverse interests, of sufficient immediacy and reality to warrant the issuance of" an opinion on the controversial subject. *See Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 829 (1941). We give due consideration to the fact that there is governmental involvement in an area arguably protected by the Constitution, which may well have a substantial adverse effect on the freedom of speech. *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974).

siderable measure of First Amendment protection against unnecessary restraints of their speech and association by their employer. *E.g., Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968);[6] *Orr v. Crowder,* 173 W.Va. 335, 343, 315 S.E.2d 593, 601 (1983), *cert. denied,* 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984). "[A]ny regulations pertaining to such employees must recognize such rights and strike a balance between the interests of such employee, as a citizen commenting on matters of public concern, and the interests of the state in promoting efficiency in its affairs." *Gooden v. Board of Appeals of W. Va.,* 160 W.Va. 318, 324, 234 S.E.2d 893, 897 (1977).[7]

■ Judges are not typical, run-of-the-bureaucracy employees, nor does our oversight of judicial disciplinary proceedings present us with an employment context. Moreover, the State's interests in regulating judicial conduct are both of a different nature and of

a greater weight than those implicated in the usual government employment case. The State has compelling interests in maintaining the integrity, independence, and impartiality of the judicial system—and in maintaining the appearance of the same—that justify unusually stringent restrictions on judicial expression, both on and off the bench. As the Fifth Circuit Court of Appeals has noted, a "state may restrict the speech of elected *judges* in ways that it may not restrict the speech of other elected officials." *Scott v. Flowers,* 910 F.2d 201, 212 (5th Cir.1990), *citing Morial v. Judiciary Comm'n,* 565 F.2d 295 (5th Cir.1977) (en banc), *cert. denied,* 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978). (Emphasis in original).

■ Despite these differences, the public employee-free speech cases provide an appropriate analogy in this case because the clash of interests requires us to engage in a similar balancing process.[8] It is the same

---

**6.** We have described *Pickering* as holding that "public employees are entitled to be protected from firings, demotions and other adverse employment consequences resulting from the exercise of their free speech rights, as well as other First Amendment rights." *Orr v. Crowder,* 173 W.Va. 335, 343, 315 S.E.2d 593, 601 (1983), *cert. denied,* 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984) (describing part of the *Pickering* holding).

**7.** The United States Supreme Court has also addressed the issue of balancing the interests of the public employer and its employees. In the Supreme Court's most recent decision in this area, *Waters v. Churchill,* —— U.S. ——, ——, 114 S.Ct. 1878, 1888, 128 L.Ed.2d 686, 699–700 (1994), it recognized that the government as an employer has efficiency interests that "should ... be assigned a greater value" than when the government acts as a sovereign regulating the public generally. Thus, the government-as-employer may rely on procedures that would be constitutionally inadequate if used by the government-as-sovereign. The case left thoroughly intact, however, the principle established by such decisions as *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); and *Pickering:* The State may not punish an employee for her speech about a matter of public concern unless " ' "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees" ' " outweighs " ' "the employee's interest in expressing herself on this matter[.]" ' "

*Waters v. Churchill,* —— U.S. at ——, 114 S.Ct. at 1884, 128 L.Ed.2d at 695, *quoting Connick* and *Pickering.*

**8.** Balancing is the appropriate analysis here because its setting (the judicial system) places this case in the line of diverse decisions addressing the State's ability to restrict speech in order to operate effectively its own institutions. In each of these contexts, the institutional interests of the State, which are typically unrelated to the suppression of expression, are balanced against the individual's free speech interests. Such contexts include, among many others, the operation of public schools, *e.g., Hazelwood School Dist. v. Kuhlmeier,* 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); state colleges and universities, *e.g., Papish v. Board of Curators of the University of Missouri,* 410 U.S. 667, 93 S.Ct. 1197, 35 L.Ed.2d 618 (1973); *Healy v. James,* 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); prisons, *e.g., Houchins v. KQED, Inc.,* 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978); *Adderly v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966); public employment, *e.g., Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied,* 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984); park systems, *e.g., Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); and government grants, *e.g., Rust v. Sullivan,* 500 U.S. 173, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991). From even this abbreviated sampling, it can be seen that an individual's free speech expectations and the government's legiti-

approach we have taken in considering the impact of disciplinary rules on lawyers' speech. *See Committee on Legal Ethics v. Douglas*, 179 W.Va. 490, 497, 370 S.E.2d 325, 332 (1988) ("the Free Speech Clause of the First Amendment protects a lawyer's criticism of the legal system and its judges, but this protection is not absolute"); *Pushinsky v. Board of Law Examiners*, 164 W.Va. 736, 266 S.E.2d 444 (1980) (Bar admission process may not inquire into an applicant's beliefs, advocacy, or associational activities). That is: the State may accomplish its legitimate interests and restrain the public expression of its judges through narrowly tailored limitations where those interests outweigh the judges' free speech interests. The principles to be applied in these various contexts (concerning public employees, judges, and lawyers) are the same, although the interests to be weighed are different and, thus, the outcomes in particular cases may therefore vary. As in any other free speech context, the regulation of speech cannot exceed that which is necessary to achieve the State's legitimate interests. *E.g., Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231, 237 (1960); *Pushinsky v. Board of Law Examiners*, 164 W.Va. at 741–44, 266 S.E.2d at 447–49.

■ Engaging the above analysis, we conclude that the State's interests in maintaining and enforcing the judicial canons against judges' speech are sufficiently served by their specific prohibitions so that the general prohibitions in Canons 1, 2, and 3 of the Judicial Code of Ethics (and now the Code of Judicial Conduct) may not be used to punish judges for their public remarks that do not concern a pending or impending matter and that do not violate either a specific prohibition or some other law.[9]

Turning to the specifics in this case, Judge Hey has been charged with violating Canons 1, 2, and 3 of the Judicial Code of Ethics for a statement he made regarding (as interpreted in the Special Board's findings of fact) the fairness of a prior disciplinary proceeding against him and intimating that he planned to take some reactive measure. So interpreted, the statement related to Judge Hey's status as an "accused" and not directly to his status as a judge in a pending or impending case.

■ Judicial disciplinary proceedings are subjects of the highest public concern. The media, and the public generally, are free to

mate interests in restraining speech can vary dramatically depending upon the context. Consequently, each of these contexts has developed its own doctrine to a certain extent. *See* note 7, *supra*. Of course, when the State discriminates against a class of protected speech using its regulatory or police powers—as opposed to its proprietary or spending powers in the above examples—the analysis must be considerably more exacting. *E.g., Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991) (speech classification must be necessary to advance a compelling governmental interest); *Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) (Accord).

9. Specific prohibitions in the current Code include Canon 4(C)(3)(b), which forbids judges from soliciting funds for educational, religious, charitable, fraternal, or civic organizations—an expressive activity clearly protected when engaged in by private citizens. *E.g., Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *Hynes v. Mayor of Oradell*, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *West Virginia Citizens Action Group, Inc. v. Daley*, 174 W.Va. 299, 324 S.E.2d 713 (1984). Similarly, Canon 5 strictly

limits judges' participation in partisan political matters, another subject that clearly embraces constitutionally protected rights. *E.g., Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Such participation can be placed off-limits to judges because of compelling and countervailing governmental interests. *See, e.g., Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) (sustaining resign-to-run law).

In addition, the requirements of Canon 2 that judges "shall respect and comply with the law" and "shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary" could be legitimately applied to a judge's speech that is the subject of valid criminal laws, such as bans on obscenity, fighting words, unlawful incitement, and criminal solicitation. Some civil restraints on speech might also possibly form the basis for an appropriate disciplinary action. For example, it is not untenable that a judge's public, intentionally false, and viciously defamatory attack on an individual could be such a case. *See Committee on Legal Ethics v. Farber*, 185 W.Va. 522, 408 S.E.2d 274 (1991), *cert. denied*, 502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992).

comment on and discuss such matters at length. *See, e.g., Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 838–39, 98 S.Ct. 1535, 1541, 56 L.Ed.2d 1, 10 (1978); *see also Daily Gazette Co. v. Committee on Legal Ethics,* 174 W.Va. 359, 326 S.E.2d 705 (1984) (public has right of access to disciplinary proceedings against lawyers because of the public significance involved). In such cases, where the judge himself (or herself) is the target and his professional reputation and possibly his career are at stake, fairness to him and promotion of the search for truth in the public marketplace require that he have the right to respond and defend himself in the public debate as well as in formal proceedings. That is especially so in West Virginia, where judges are elected officials. A judge depends on public opinion to remain in his job, and the public needs balanced information about its judges to make informed decisions at the polls. The formal proceedings of the Judicial Hearing Board do not, by themselves, provide an accused judge with a sufficient forum to influence public perceptions, nor do they provide the end-all for the public's need to know about a judge's conduct.[10]

The Canons are not insensitive to the free expression rights of judges. Canon 4(B) of the current Code of Judicial Conduct provides that "[a] judge may speak, write, lecture, teach, and participate in other extra-judicial activities concerning the law, the legal system, the administration of justice, and non-legal subjects, subject to the requirements of this Code." The commentary to

Canon 3(B)(9) of the Code of Judicial Conduct, which restricts a judge's ability to comment publicly, states that the restriction "does not prohibit a judge from commenting on proceedings in which the judge is a litigant in a personal capacity[.]"[11] These provisions certainly indicate that Judge Hey's remarks, which alluded only to a proceeding in which he was a party and were not otherwise specifically prohibited by the Code, are not within Canon 3's proscriptions.[12] To now apply that Canon to his speech would create the same constitutional deficiency as that recently struck down by the United States Supreme Court in *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1048–51, 111 S.Ct. 2720, 2731–32, 115 L.Ed.2d 888, 906–08 (1991). That case overturned a disciplinary action against a criminal defense attorney who had publicly but carefully responded to the case against his just-indicted client. The relevant disciplinary rule, the Court held, misled the attorney into thinking that he could engage in such expression and failed "to provide fair notice to those to whom [it] is directed." 501 U.S. at 1048, 111 S.Ct. at 2731, 115 L.Ed.2d at 906. (Internal quotation marks omitted). The rule was therefore unconstitutionally vague.

Canons 1 and 2 also fail to provide an adequate or appropriate basis for limiting or disciplining judges' speech about their own disciplinary proceedings. Indeed, Canon 1's principle that judges shall uphold the integrity and independence of the judiciary could be disserved by punishing judges for discussing with the public the fairness and validity of

---

**10.** This case must be distinguished from those in which a judge responds to attacks on his ruling(s) in a pending case. In that circumstance, the State's interests in maintaining the appearance of impartiality and independence of the judiciary trumps an individual judge's right to defend himself. But those interests of the State are not implicated to the same extent or in the same way when a judge publicly comments on charges of misconduct made against him in a formal disciplinary proceeding. As noted below, Canon 3 explicitly adopts this distinction and is, therefore, narrowly tailored to accomplish the State's interests.

**11.** See also Canon 2C, which, to avoid infringing upon a judge's associational rights, makes certain exceptions to a general ban on a judge's membership in organizations that discriminate

on the basis of race, sex, religion, or national origin.

**12.** We are applying Canon 3B(7) of the Code of Judicial Conduct to this case because, as noted in note 1, *supra,* we have determined that individuals charged under the old canons should benefit from any new advantageous statement of law. In essence, we are extending the criminal law principles governing the retroactive effect of amended statutes. We have previously held in the criminal law setting that "where a repeal arises by implication from the imposition of a lesser penalty for the same offense, the mitigated penalty may be imposed although the prosecution proceeds under the repealed act." *State ex rel. Arbogast v. Mohn,* 164 W.Va. 6, 11, 260 S.E.2d 820, 824 (1979).

their hearings. Clearly, the public has a need to know about any deficiencies in those proceedings, and the integrity of the judiciary cannot be advanced by a rule that chills critical discussion by those most knowledgeable of the very process created to enforce and protect judicial integrity.

Canon 2 directs that judges must avoid impropriety, and the appearance of impropriety, in their personal and professional conduct. (*See* Commentary to the current Canon 1(A)) This section cannot be stretched to restrict pure speech on a matter of public interest when the speech does not pertain to pending or impending cases and is not within a specific prohibition of the Code or some other law. It is difficult to comprehend how truthful remarks or statements of opinion by a judge about a matter of public significance unrelated to a matter before him, or likely to come before him, and which is not otherwise specifically prohibited can ever create the appearance of impropriety. In this case, Judge Hey accurately stated that a member of his hearing panel left the hearing for a period of time while it was in progress. He also claimed that he intended to do something about it. Although the statement could, somewhat implausibly, be taken as a physical threat, the hearing panel and this Court have found that a threat was neither intended nor reasonably inferable. Thus, there is nothing left in the remark that appears improper.

Finally, Canons 1 and 2 are fraught with subjectivity and elasticity. As stated in the Commentary to the current Canon 2(A), "it is not practicable to list all prohibited acts," and the canon is therefore "necessarily cast in general terms." The same could describe Canon 3. Such subjectivity and elasticity, or vagueness, create problems when applied to expression. That is, vague regulations fail to adequately direct regulatees and cause them to play it safe by foregoing participation in public discussion, thus discouraging them from engaging in what would be protected expression and also depriving the public of their contributions. *West Virginia Citizens Action Group v. Daley,* 174 W.Va. 299, 305–06, 324 S.E.2d 713, 719–20 (1984); *accord, e.g., Keyishian v. Board of Regents,* 385 U.S.

589, 598–600, 87 S.Ct. 675, 681–82, 17 L.Ed.2d 629 (1967). More recently, the United States Supreme Court in *Gentile v. State Bar of Nevada,* 501 U.S. at 1051, 111 S.Ct. at 2732, 115 L.Ed.2d at 908, emphasized that

> "[t]he prohibition against vague regulations of speech is based in part on the need to eliminate the impermissible risk of discriminatory enforcement, *Kolender v. Lawson,* 461 U.S. 352, 357–358[, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909] (1983); *Smith v. Goguen,* 415 U.S. 566, 572–573[, 94 S.Ct. 1242, 1246–47, 39 L.Ed.2d 605, 611–12] (1974), for history shows that speech is suppressed when either the speaker or the message is critical of those who enforce the law. The question is not whether discriminatory enforcement occurred here . . ., but whether the Rule is so imprecise that discriminatory enforcement is a real possibility."

■ This is not to say that Canons 1 and 2 are facially unconstitutional; rather, it means that those canons cannot constitutionally be manipulated to apply to a judge's off-the-bench remarks about a subject of public concern that is neither presently pending before him nor likely to come before him and that does not violate some other more specific provision of the Code or the law. A judge may not be disciplined consistent with the First Amendment to the United States Constitution or with Section 7 of Article III of the West Virginia Constitution for his remarks during a radio interview in which he discussed his own disciplinary proceeding, criticized a member of his investigative panel, and stated his intention to take some reactive and lawful measure against the panel member.

■ Admittedly, Judge Hey's comments created a storm of controversy and were not appreciated by many of the listeners, but it is in this context that the First Amendment plays its most important function. *See Waters v. Churchill,* —— U.S. ——, ——, 114 S.Ct. 1878, 1886, 128 L.Ed.2d 686, 697 (1994), *quoting Cohen v. California,* 403 U.S. 15, 24–25, 91 S.Ct. 1780, 1788, 29 L.Ed.2d 284, 293 (1971) ("The First Amendment demands a tolerance of 'verbal tumult, discord, and even

offensive utterance,' as 'necessary side effects of … the process of open debate' "); *Terminiello v. Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131, 1134 (1949) ("[A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging"). The comments of Judge Hey cannot be construed as a physical or otherwise improper threat against Dr. Welch. Judge Hey's commentary thus clearly falls within protected speech and need not be punished in order to maintain the purposes of the judicial canons. As often proved in this State, judges (like anyone else) have a right to be obnoxious in their public expression. They may continue to offend, so long as they refrain from violating specific provisions of the Code or some other law. While offensive expression may raise questions about the speaker's temperament and discretion, the Constitution requires that those questions must be answered by the public through the ballot box and not by this Court through disciplinary proceedings. The Special Judicial Hearing Board correctly recommended the dismissal of this complaint.

Complaint Dismissed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.